IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| JERMAINE JACKSON, | ) | PLAINTIFF |
| | ) | DEMAND TRIAL BY JURY |
| Plaintiff, | ) | |
| | ) | Case No. 13-1901 |
| v. | ) | |
| | ) | Judge |
| TIMOTHY B. MOORE, DETECTIVE GARNER, | ) | |
| UNKNOWN OFFICERS, and the | ) | Magistrate |
| CITY OF PEORIA, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff JERMAINE JACKSON, by and through his attorneys, THE LAW OFFICES OF SCOTT T. KAMIN, and complaining against Defendants, TIMOTHY B. MOORE, DETECTIVE GARNER, UNKNOWN OFFICERS and the CITY OF PEORIA, states as follows:

### NATURE OF CLAIM

1. This action arises under 42 U.S.C. §1983, 28 U.S.C. §1367, to redress deprivations of the civil rights of plaintiff through acts and/or omissions of defendants committed under color of law. Specifically here, defendants deprived plaintiff of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution

2. Additionally, plaintiff relies upon the Court's pendent jurisdiction to assert the Illinois State claims of due process, malicious prosecution, and intentional infliction of emotional distress.

### JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(a)(3).

4. Venue lies in the United States District Court, Central District of Illinois, pursuant to 28 U.S.C. §1391, because all events or omissions giving rise to this claim occurred in this district.

## PARTIES

5. At all times herein mentioned, plaintiff was and is a citizen of the United States and resides within the jurisdiction of the court.

6. At all times herein mentioned, defendants TIMOTHY B. MOORE, DETECTIVE GARNER, and UNKNOWN OFFICERS were officers employed by the Peoria Police Department and were acting under color of state law and as the employees or agents of the City of Peoria, Illinois.  They are being sued in their individual capacities.

7. Defendant CITY OF PEORIA is a municipal corporation, duly organized under the laws of the State of Illinois.  Defendant CITY OF PEORIA maintained, managed, and/or operated the Peoria Police Department.

## Facts

### History of the Robberies and Home Invasions

8. In October of 2011, a string of robberies and home invasions targeting the elderly were being committed throughout Peoria, Illinois.

9. During the robberies, assailants would force their way inside elderly victims' homes. The crimes committed against victims would include; assault, robbery, and carjacking.

10. Among the items reported stolen were a vehicle taken from robbery victim Clarence Heinz's residence (later recovered at the "Heritage Inn") and a watch with an inscription that reads "25 years of service from Producer's dairy" with a depiction of the twelve apostles.

11. The individual defendants, prior to arresting Plaintiff, learned through their investigation that Mark Prins, a white male, would initially knock on the doors of the victims and

approached them with a proposition to paint their addresses on the curb for a small fee. After addresses were painted on the curb, the group of assailants would come back and commit the robberies and home invasions.

12.  Due to the media frenzy and public fear, the city of Peoria and its Police Department were under intense pressure to capture the assailants.

### Arrest And Detention of Plaintiff

13.  On October 27, 2011, plaintiff Jermaine Jackson ("Jackson"), went to the Peoria Police Department in response to an inquiry by police officers regarding his minor son.

14.  Unbeknownst to Plaintiff, Detectives Timothy B. Moore ("Moore") and Garner ("Garner") were conducting an unrelated unsuccessful investigation involving a string of home invasions in Peoria against elderly victims. Plaintiff, now at the mercy of the Peoria police department, had just walked into a situation where he would eventually become the suspect of crimes he knew nothing about.

15.  Moore and Garner contacted witness Ronald Bullock ("Bullock") and victim Heinz to obtain positive identification of the assailants.

 16. Garner presented a "black and white" photo lineup to Bullock where Bullock initially identified Michael Ralph ("Ralph") as the assailant. Detective Garner, maliciously ignored Bullock's identification of Ralph, instead Garner focused his investigation upon the Plaintiff.

17. While Plaintiff was in custody, Garner maliciously removed Ralph's photo from the photo array and suggestively inserted the Plaintiff's photo in its place. The individual defendants then presented the "black and white" photos lineup, with only the Plaintiff's photo depicted in color, to Bullock and victim Heinz; who both in turn identified Plaintiff as the assailant.

3

18. Garner maliciously accepted the photo lineup identification of Plaintiff even though Garner knew Ralph had previously been identified by Bullock as the assailant and that Heinz revealed that he wasn't confident in his recollection of the assailants stating that he would rely on Bullocks identification because as Heinz put it, he had "a better look".

19. Heinz initially described the assailant as 40 to 43 years old, 5'8 to 5'9 in height and slim-about 190 pounds. Plaintiff's description at the time of his arrest was drastically different from Heinz description of the assailant. The Plaintiff was described as, 37 years old, 6'2 in height, and 245 pounds.

20. Finally, after securing the tainted identification of Plaintiff, the individual defendants informed that Plaintiff that they wanted to speak to him regarding an unrelated incident.

21. During the meeting with Detectives Moore and Garner, Jackson was informed of their investigation into the string of home invasions in Peoria, and that Jackson had become their prime suspect.

22. Jackson was then held, against his will, for various home invasions and robberies.

23. On October 27, 2011, while Plaintiff was being held and questioned, similar home invasion occurred, fitting the Modus Operandi of the of the crimes for which the Plaintiff was being held. Yet the defendants continued to hold Plaintiff in custody forr the previous home invasions.

24. On October 28, 2011, Defendants conducted an illegal, warrantless search of Plaintiff's residence while Plaintiff was in custody. Neighbor saw the officers' illegal entry and the officers inadvertently tripped house alarms during their illegal search.

25. The next day to cover themselves for the illegal search, the defendants obtained a search warrant for the Plaintiff's residence.

**Plaintiff's Actual Innocence**

26. The Peoria Police Department and unknown individual defendant officers arrested Larry Hughes ("Hughes") for the home invasion of Anna Dufek's residence.

27. The Peoria Police Department and unknown individual defendant officers played a recording of the 911 call made during the home invasion of Anna Dufek. Hughes identified the voice of the perpetrator as belonging to Michael A. Ralph.

28. Hughes revealed, to the officer defendants, that Mark Prins, and Michael A. Ralph were the home invasion assailants. Hughes also provided details as to how the two assailants targeted the homes of their victims, their motive, and scheme behind the home invasions. After speaking with the victims and compiling evidence of the crimes the individual defendants knew or should have known that Hughes information was credible. The individual defendants ignored the exculpatory information provided by Hughes, did not give the exculpatory evidence to the states attorney or Plaintiff and carried on with their malicious prosecution of the Plaintiff.

29. The individual defendants learned that the vehicle that was stolen from Heinz's residence- which Plaintiff was arrested, charged, and incarcerated for robbery and home invasion- was found at the "Heritage Inn" located at 2726 W. Lake Street. This vehicle belonged to the victim, Heinz.

30. The individual defendants learned from employees of the Heritage Inn, that Michael Ralph Anthony resided at the Heritage Inn for at least 41 months. Employee, Bill Thernell, informed the individual defendants that he saw Michael Ralph Anthony drive up and park Heinz's stolen vehicle at his residence.

31. One of the employees went on to state that Michael Anthony Ralph attempted to sell him several pieces of jewelry in the past. One of these pieces of jewelry included a watch with an inscription reflecting "25 years of service from some dairy" and a depiction of the twelve apostles; a similar description given by Heinz as the piece of jewelry taken from his home.

32. The individual defendants took DNA samples during their investigation. The DNA sample excluded the Plaintiff; the individual defendants ignored this exculpatory evidence. The individual defendants ignored the exculpatory information provided by the DNA results, did not give the exculpatory evidence to the states attorney or Plaintiff and carried on with their malicious prosecution of the Plaintiff.

33. Several additional home invasions and robberies occurred, while Plaintiff was in custody, matching the *modus operandi* of the assailants' crimes for which Plaintiff was in custody. Also, The individual defendants knew that, from their investigation into Plaintiff's work history, Plaintiff was at work during the times the home invasions, assaults, robberies, and carjackings took place. Yet defendants carried on with their malicious prosecution of the Plaintiff.

34. The individual defendants ignored the exculpatory information provided by the Heritage Inn employees, did not produce video surveillance footage recovered from Heritage Inn employees, did not give the exculpatory evidence to the states attorney nor Plaintiff and carried on with their malicious prosecution of the Plaintiff.

35. Defendant police officers caused the false charges of various home invasions and residential burglaries to be filed against Plaintiff. Subsequently, plaintiff was booked, processed, and charged with said crimes, and was wrongfully incarcerated.

36. On November 15, 2011, Plaintiff was officially indicted for one (1) count of home invasion and one (1) count of residential burglary occurring on October 19, 2011.

## Trial

37.  Plaintiff retained the services of a two criminal defense attorneys.  A jury trial was held on September 10, 2012, regarding the criminal charges against plaintiff.

38.  On the stand, Heinz said the assailant used his cell phone to call the co-assailant into the house after he forced his way inside his home. Plaintiff's criminal defense counsel had requested the phone records months prior to Plaintiff's trial but neither investigating officers or prosecution never disclosed the requested records.

39.  Defendants admitted to conducting an illegal search of Plaintiff's residence.

40.  In spite of the many constitutional violations by defendant police officers as described above, the plaintiff was found not guilty on September 12, 2012, and released from custody shortly thereafter, having spent almost eleven months in custody.

41.  By reason of the above-described acts and omissions of the defendant police officers, Plaintiff sustained injuries, humiliation, and indignities, and suffered great mental and emotional pain and suffering.

42. The aforementioned acts of the defendant police officers were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for plaintiff's rights, justify the award of exemplary and punitive damages

43.  By reason of the above-described acts and omissions of the individual defendants, Plaintiff was required to retain an attorney to initiate and prosecute legal proceedings, and otherwise render legal assistance to him in the present action, so that he might vindicate the loss and impairment of his rights.  By reason thereof, plaintiff requests payment by the individual defendants of a reasonable sum for attorneys' fees pursuant to 42 U.S.C. §1988, the Equal Access to Justice Act, or any other provision set by law.

## COUNT I

### FALSE ARREST

44. Plaintiff, JERMAINE JACKSON, incorporates and re-alleges paragraphs 1 – 43, as though set forth herein in their entirety.

45. The seizure and arrest of plaintiff, JERMAINE JACKSON was effected without probable cause, and was unreasonable.

46. By reason of the conduct of the individual defendants and unknown officers, plaintiff was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

## COUNT II

### FAILURE TO INTERVENE AGAINST UNKNOWN OFFICERS

47. Plaintiff incorporates and re-alleges paragraphs 1 – 43, 45-46, as though set forth herein.

48. Defendants UNKNOWN OFFICERS had reason to know that plaintiff was arrested and charged falsely, unjustifiably and without legal cause.

49. Defendant UNKNOWN OFFICERS had a reasonable opportunity to prevent said arrest and submission of false evidence from occurring, but did not do so.

50. By reason of the conduct of defendant UNKNOWN OFFICERS, Plaintiff was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL INDIVIDUAL DEFENDANTS

51. Plaintiff incorporates and re-alleges paragraphs 1 – 43, 45-46, 48-50, as though set forth herein.

52. The conduct of the individual defendants was extreme and outrageous. The individual defendants intended to inflict severe emotional distress on Plaintiff, or knew that there was a high probability that their conduct would do so.

53. Defendants' conduct did, in fact, cause Plaintiff severe emotional distress.

54. Defendant CITY OF PEORIA is liable for the acts of the individual defendants pursuant to the doctrine of *respondeat superior.*

## COUNT IV - 42 U.S.C. §1983

## DUE PROCESS – RIGHT TO A FAIR TRIAL

55. Plaintiff restates and realleges all the statements made in paragraphs 1 – 43, 45-46, 48-50, 52-54 of this Complaint as though fully set forth herein.

56. The individual defendants, MOORE, GARNER and UNKNOWN OFFICERS deprived plaintiff of fair criminal proceedings by engaging in multiple acts which include, but are not limited to, using identification evidence derived from a suggestive photo lineup at trial, failing to disclose known exculpatory evidence, ignoring exculpatory evidence, failing to investigate actual innocence of Plaintiff, submitting false charges as contained in the criminal complaints, submitting false police reports, omitting exculpatory evidence from police reports, swearing to false statements, and otherwise acting to influence and persuade the State's Attorney to prosecute Plaintiff and to deny Plaintiff fair legal proceedings.

57. These acts were directed toward Plaintiff, were intentional and material, and therefore were in violation of plaintiff's due process rights.

58. By reason of the conduct of the individual defendants, Plaintiff was deprived of rights, privileges and immunities secured to him by the due process clause of the Fourteenth, fifth, and sixth Amendments to the Constitution of the United States.

59. As a proximate result of this deprivation of due process, Plaintiff suffered extreme physical, emotional and pecuniary damage.

## COUNT V

### MALICIOUS PROSECUTION AGAINST ALL INDIVIDUAL DEFENDANTS

60. Plaintiff restates and re-alleges all the statements made in paragraphs 1 – 43, 45-46, 48-50, 52-54, 56-59 of this Complaint as though set forth herein.

61. The individual defendants maliciously caused criminal charges to be filed and prosecuted against plaintiff. There was no probable cause for the institution of criminal charges against Plaintiff. The criminal proceedings were commenced and continued maliciously.

62. Defendants MOORE, GARNER and UNKNOWN OFFICERS facilitated this malicious prosecution by failing to investigate, falsifying evidence, creating false police reports, falsifying written criminal charges, and giving false and perjured testimony and information under oath.

63. Plaintiff was wrongfully incarcerated, and then wrongfully prosecuted until the jury trial verdict of not guilty was rendered in the Tenth Judicial Circuit - Peoria County.

64. Plaintiff was injured emotionally and physically from the loss of liberty, wrongful incarceration and the depravation of related rights.

.    65. The individual defendant police officers are liable to Plaintiff under Illinois law for the state supplemental claim of malicious prosecution.

66. Defendant CITY OF PEORIA is liable pursuant to the doctrine of *respondeat superior.*

## COUNT VI

### CLAIM UNDER 745 ILCS 10/9-102
### AGAINST DEFENDANT CITY OF PEORIA

67. Plaintiff restates and realleges all the statements made in paragraphs 1 – 43, 45-46, 48-50, 52-54, 56-59, 61-66 of this Complaint as though fully set forth herein.

68. Defendant CITY OF PEORIA was, at all times material to this Complaint, the employer of the police defendants.

69. All individual defendants committed the acts alleged above in the scope of their employment as employees of Defendant CITY OF PEORIA.

## COUNT VII

### UNREASONABLE SEARCH AND SEIZURE

70. Plaintiff restates and realleges all the statements made in paragraphs 1 – 43, 45-46, 48-50, 52-54, 56-59, 61-66, 68-69 of this Complaint as though fully set forth herein.

71. The individual defendants forced open Plaintiff front door and entered Plaintiff's abode without warrant, without probable cause and absent exigent circumstances.

72. Plaintiffs did not consent to defendants' forced entry into Plaintiff's abode without warrant, without probable cause and absent exigent circumstance.

73. Individual defendants acted jointly and in concert, with the intent and effect of harming and depriving Plaintiff of his constitutionally protected rights against unreasonable search and/or seizure and interferences with his property when they forced open Plaintiff's

front door and entered Plaintiff's abode without warrant, without probable cause and absent exigent circumstance.

74. As a result of the Defendants' unreasonable search and seizure Plaintiff suffered severe emotional and physical trauma.

WHEREFORE, Plaintiff requests judgment against all individual defendants, and:

A. That defendants be required to pay Plaintiff general damages, including emotional distress, in a sum to be ascertained at a trial of this matter,

B. That individual defendants be required to pay Plaintiff special damages,

C. That the entity defendant be required to reimburse the individual defendants pursuant to 745 ILCS 10/9-102.

D. That individual defendants be required to pay plaintiff attorneys' fees pursuant to 42 U.S.C. §1988, the Equal Access to Justice Act, or any other applicable provision,

E. That individual defendants be required to pay plaintiff exemplary and punitive damages in a sum to be ascertained at a trial of this matter,

F. That defendants be required to pay plaintiff costs of the suit herein incurred, and

G. That Plaintiff be granted such other and further relief as this Court may deem just and proper.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY.**

Dated: March 11, 2013                                             /s/ Scott T. Kamin
                                                                            Scott T. Kamin


Scott T. Kamin
Law Offices of Scott T. Kamin
53 W. Jackson Blvd, Suite 1028
Chicago, IL  60604
(312) 322-0077
Ill. Attorney No.: 6226855